UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 01-255 (RHK/ESS)
Civil No. 04-4973(RHK)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>BOBBY MARVIN COLLINS,<br><br>Petitioner/Defendant. | GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE |

The United States, by and through its attorneys, Thomas B. Heffelfinger, United States Attorney for the District of Minnesota, and Joseph T. Dixon, III, Assistant United States Attorney, hereby submits the following response to petitioner's Section 2255 motion.

**CASE SUMMARY & PROCEDURAL HISTORY**

On August 9, 2001, defendant was arrested in a car in North Minneapolis with a pistol[1] and ammunition. On September 7, 2001, defendant was indicted on one count of Felon in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924 (e)(1).

On September 27, 2001, on behalf of the defendant, defense counsel filed numerous pretrial motions including, among other things, a motion to dismiss the indictment and a motion to suppress evidence. On October 3, 2001, Magistrate Judge E.S. Swearingen held an evidentiary hearing. On October 26, 2001, the magistrate

[1] At trial, ATF Special Agent Jim Mazzon testified that the pistol may have been manufactured prior to 1898, potentially making it an antique and not a "firearm" regulated by federal law. The pistol did function and was loaded.

judge issued a Report and Recommendation recommending that defendant's motion to suppress be denied. The district court adopted the Report and Recommendation in an Order dated November 13, 2001.

On November 19, 2001, the defendant was tried by a jury before this Court. Later that same day, the jury returned a guilty verdict.

On November 26, 2001, on behalf of the defendant, defense counsel moved for a new trial based on the district court's limitation of defense counsel to non-leading questions of a witness called by the government. Defendant's motion for a new trial was denied by the district court on November 27, 2001. On January 7, 2002, defense counsel brought a motion to reconsider. Defendant's motion was denied on January 14, 2002.

On March 8, 2002, defendant was sentenced to 235 months – the bottom of the applicable guideline range.

On March 11, 2003, defendant filed a notice of appeal. On appeal, defendant contested his conviction on three grounds: Collins claimed that (i) this Court erred in denying his motion to suppress evidence; (ii) this Court erred by limiting defense counsel to non-leading questions of a witness called by the government; and (iii) this Court erred by denying the defendant's motion to reopen the evidence after the parties had completed closing arguments and the jury had left the courtroom to begin

deliberations. In addition, defendant also claimed that his 235-month sentence was improperly enhanced under 18 U.S.C. §924(e) and violated the Eighth Amendment of the Constitution. On March 3, 2003, the Court of Appeals affirmed defendant's conviction.

Defendant filed a writ of certiorari to the Supreme Court. On December 8, 2003, defendant's writ was denied.

On December 8, 2004, defendant filed this motion pursuant to 28 U.S.C. § 2255.

## ARGUMENT

### I. PETITIONER CANNOT DEMONSTRATE INEFFECTIVE ASSISTANCE OF COUNSEL.

To sustain a claim of ineffective assistance of counsel a petitioner "faces a heavy burden." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established the benchmark for deciding such claims as whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. 466 U.S. 668, 688-89 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness", taking into account a strong presumption of counsel's "reasonable professional assistance." Id. at 690. Additionally, the petitioner must demonstrate prejudice. To prove prejudice, a petitioner must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.

A. Counsel Was Not Ineffective

Petitioner has not met his burden by establishing that counsel's performance "fell below an objective standard of reasonableness." To the contrary, the record demonstrates that defense counsel diligently pursued her client's interests: filing numerous pretrial motions (Docket 11-16), and filing memoranda of law with the Court (Docket 18, 20) and filing post-trial submissions (Docket 40, 47).

B. Petitioner's Claim of Prejudice Has No Merit

Nor do petitioner's claims of prejudice have any merit. Petitioner's motion is premised on the assertion that his counsel failed for the following reasons: (i) the federal statute prohibiting felons from possessing ammunition, 18 U.S.C. § 922, violated the defendant's Second Amendment "obligations" as a purported member of a well-regulated militia; (ii) defense counsel should have argued that the ammunition was "antique" and as such not subject to federal regulation; (iii) the application of the Armed Career Criminal Enhancement violated defendant's Sixth Amendment rights in that the Supreme Court's decision in Apprendi v. New Jersey, 526 U.S. 466, 490 (2000) purportedly requires facts that increase a sentence be proven to a jury beyond a reasonable doubt.

1. Defendant's Conviction Did Not Violate the Second Amendment

Defendant's contention that his conviction for possessing a firearm violated his rights and obligations under the Second Amendment under the United States Constitution has no merit. In a line of cases starting with United States v. Synnes, 438 F.2d 764, 772 (8th Cir. 1971), the Eighth Circuit has held that the Second Amendment protects the right to bear arms when it is "reasonably related to the maintenance of a well regulated militia." See, e.g., United States v. Wilson, 315 F.3d 972, 973-74 (8th Cir. 2003); United States v. Lewis, 236 F.3d 948, 950 (8th Cir. 2001); United States v. Smith, 171 F.3d 617, 624 (8th Cir. 1999); United States v. Farrell, 69 F.3d 891, 894 (8th Cir. 1995); United States v. Hale, 978 F.2d 1016, 1020 (8th Cir. 1992); United States v. Nelsen, 859 F.2d 1318, 1320 (8th Cir. 1988); Cody v. United States, 460 F.2d 34, 37 (8th Cir. 1972). Since the defendant has not shown, and cannot show, that his ammunition possession was reasonably related to a well regulated militia, his Second Amendment argument cannot succeed.

2. The Ammunition Was Not "Antique."

Defendant's contention that the ammunition in question might have been considered to be an "antique firearm" is also without basis. The definition of "firearm" is set forth in 18 U.S.C. § 921(a)(3). The definition of "firearm" expressly excludes "antique firearms", which is defined in turn at 18 U.S.C. § 921(a)(16). The

term ammunition is defined in a completely separate provision, 18 U.S.C. § 921(a)(17)(A), which does not incorporate, nor make any reference to, the concept of "antique firearm" or manufacturing date. Given that the statute under which the defendant was prosecuted, 18 U.S.C. § 922(g) prohibits possession of firearms and ammunition, there is nothing to defendant's contention.

Defendant also argues that the government failed to prove the date on which the ammunition traveled in interstate commerce. Defendant cites no legal authority in support of this proposition. Nor is there any. To the contrary, the government need only prove that at some time prior to the defendant's possession of the firearm, it was transported across state lines. United States v. Shelton, 66 F.3d 991 (8th Cir. 1995).

3. Defendant's Sixth Amendment Rights Were Not Violated

Finally, defendant contends that the application of the Armed Career Criminal Act penalty enhancement violated his Sixth Amendment rights because the facts of his prior convictions were not proven to a jury beyond a reasonable doubt as purportedly required by Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). This contention is without basis. However, the Supreme Court has expressly held that penalty enhancements based on prior convictions need not be proven to a jury beyond a reasonable doubt. United States v. Almendarez-Torres, 523 U.S. 224 (1998).

Moreover, defense counsel's conduct did not constitute ineffective assistance. The defendant personally stipulated on the record to his prior felony conviction. (Tr. at 4.) Undoubtedly, this was done so that the government would not put in additional evidence regarding the defendant's criminal history, which might have been prejudicial. This kind of tactical decision is reasonable, logical and well within the acceptable contours of legal advocacy. Strickland, 466 U.S. at 690.

II. BLAKELY DOES NOT APPLY RETROACTIVELY

In the last paragraph of his petition, defendant Collins raises the issue of Blakely v. Washington, 124 S.Ct. 2531 (2004). Although it is raised in the context of his claim of ineffective assistance, he also argues that the holding of Blakely should apply retroactively to his conviction, which was finalized before Blakely was decided. Defendant's claim has no merit.

The Supreme Court has long held that its new constitutional decisions are not necessarily applicable to proceedings that had been completed when the new decisions were rendered. See Allen v. Hardy, 478 U.S. 255 (1986) (jury selection rule of Batson v. Kentucky, 476 U.S. 79 (1986), not applicable to cases on collateral review); Solem v. Stumes, 465 U.S. 638 (1984) (custodial interrogation rule of Edwards v. Arizona, 451 U.S. 477 (1984), not applicable to cases on collateral review); Michigan v. Payne, 412 U.S. 47 (1973) (prophylactic sentencing rule of North Carolina v.

Pearce, 395 U.S. 711 (1969), not retroactive); Halliday v. United States, 394 U.S. 831 (1969)(guilty plea acceptance rule of McCarthy v. United States, 394 U.S. 459 (1969), not retroactive); Stovall v. Denno, 388 U.S. 293 (1967)(identification procedure decisions of United States v. Wade, 388 U.S. 218 (1967), and Gilbert v. California, 388 U.S. 263 (1967), not retroactive); Johnson v. New Jersey, 384 U.S. 719 (1966)(interrogation rules of Escobedo v. Illinois, 378 U.S. 478 (1964), and Miranda v. Arizona, 384 U.S. 436 (1966), not retroactive); Tehan v. Shott, 382 U.S. 406 (1966) (Griffin v. California, 380 U.S. 609 (1965), rule against commenting on defendant's failure to testify not retroactive); Linkletter v. Walker, 381 U.S. 618 (1965)(exclusionary rule of Mapp v. Ohio, 367 U.S. 643 (1961), not retroactive).

The governing rule was set forth in Justice O'Connor's plurality opinion in Teague v. Lane, 489 U.S. 288 (1989). Justice O'Connor endorsed Justice Harlan's principles "that new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review." Id. at 303. The latter principle is subject to only two narrow exceptions, which Justice O'Connor adopted from Justice Harlan with some modification. First, a new rule should be applied to cases on collateral review if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to

proscribe." Id. at 311. Second, a new rule should be applied retroactively if it implicates fundamental fairness in a way that seriously affects the likelihood of an accurate conviction. Id. at 312-13. The Supreme Court has limited the class of new rules which concern fundamental fairness to "watershed rules of criminal procedure implicating fundamental fairness and accuracy of the criminal proceeding." It has stated: "Whatever the precise scope of this exception, it is clearly meant to apply only to a small core of rules requiring 'observance of those procedures that . . . are implicit in the concept of ordered liberty.'" Graham v. Collins, 506 U.S. 461, 478 (1993), quoting Teague, 489 U.S. at 311. In Teague, Justice O'Connor stated: "Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." 489 U.S. at 313.[2]

Although the relevant portion of Justice O'Connor's opinion was a four-justice plurality opinion, her Teague standards have been applied by a majority of the Supreme Court, with some modification for sentencing rules, in a number of cases. See, e.g., O'Dell v. Netherland, 521 U.S. 151 (1997); Graham v. Collins,

---

[2] The Supreme Court, despite many decisions addressing new rules of constitutional law, has yet to find any retroactive under the Teague rule. See Levan v. United States, 128 F. Supp. 2d 270, 277-78 (E.D. Pa. 2001) (collecting cases).

506 U.S. 461 (1993); Sawyer v. Smith, 497 U.S. 227 (1990). As the Court explained in O'Dell v. Netherland, "[t]he Teague inquiry is conducted in three steps." 521 U.S. at 156. The first step is to determine whether the defendant's conviction became final prior to the new decision he invokes. If it did not, he is entitled to the benefit of the decision. If it did become final before the new decision, the second step is to determine whether the decision adopts a new rule. If it does not, again he is entitled to the benefit of the decision. If it did adopt a new rule, the third step is to determine whether one of the two narrow exceptions applies. If either exception applies, the defendant is entitled to the benefit of the new decision. If neither exception applies, the defendant is not entitled to the benefit of the decision and the inquiry ends.

In this case, it is undisputed that defendant's conviction became final before June 24, 2004, the date of the Blakely decision. Thus, the inquiry moves to the second step.

The Supreme Court has defined a "new rule" as one that was not "dictated by precedent existing at the time the defendant's conviction became final." Graham v. Collins, 506 U.S. at 467; Sawyer v. Smith, 497 U.S. at 234; Teague v. Lane, 489 U.S. at 301 (emphasis in originals). A rule may be new even though it finds general support in prior cases. Sawyer v. Smith, 497 U.S. at 236. The test is whether, at the time Blakely was decided, a "reasonable

jurist" would have felt "compelled" to adopt the rule it stated. O'Dell v. Netherland, 521 U.S. at 164; Graham v. Collins, 506 U.S. at 477. Under this standard, Blakely clearly adopted a new rule.

Four years before Blakely, in Apprendi, the Court held that any fact which increases a statutory maximum sentence must be determined by a jury. Subsequently, every circuit court of appeals addressed whether this rule applied to determinations made, as in this case, in order to calculate a sentence under the guidelines within the statutory maximum. Without exception, every court held that the Apprendi rule was inapplicable to the Sentencing Guidelines, so long as the final sentence did not exceed the statutory maximum sentence on any count of conviction.[3] That body of law makes unquestionable that Blakely was not "dictated" by the Apprendi precedent, and reasonable jurists were not compelled to so conclude. Because Blakely therefore constituted a new rule of procedure, the question remains whether it is subject to either of the exceptions outlined in Teague – for new substantive rules which

---

[3] See, e.g., United States v. Casas, 356 F.3d 104, 128 (1st Cir. 2004); United States v. Luciano, 311 F.3d 146, 153 (2d Cir. 2002); United States v. Parmelee, 319 F.3d 583, 592 (3d Cir. 2003); United States v. Cannady, 283 F.3d 641, 649 & n.7 (4th Cir. 2002); United States v. Floyd, 343 F.3d 363, 372 (5th Cir. 2003); United States v. Tarwater, 308 F.3d 494, 517 (6th Cir. 2002); United States v. Merritt, 361 F.3d 1005, 1015 (7th Cir. 2004); United States v. Banks, 340 F.3d 683, 684-65 (8th Cir. 2003); United States v. Ochao, 311 F.3d 1133, 1134-36 (9th Cir. 2002); United States v. Mendez-Zamora, 296 F.3d 1013, 1020 (10th Cir. 2002); United States v. Ortiz, 318 F.3d 1030, 1039 (11th Cir. 2003); United States v. Pettigrew, 346 F.3d 1139, 1147 n.18 (D.C. Cir. 2003).

change the definition of criminal conduct, or for "watershed" rules addressed to matters of fundamental fairness.

That Blakely is not subject to either of these exceptions was essentially determined by the Supreme Court on the same day that it decided Blakely in Schriro v. Summerlin, 124 S. Ct. 2519 (2004). In Schriro, the Court addressed the issue of retroactive application of Ring v. Arizona, 536 U.S. 584 (2002). In Ring, the Court had applied the Apprendi principle to a death sentence imposed under the same Arizona sentencing scheme at issue in Summerlin. The Ring Court concluded that, because Arizona law authorized the death penalty only if an aggravating factor was present, Apprendi required the existence of such a factor to be proved to a jury rather than to a judge.

In Summerlin, the Court determined that Ring presented a new rule of procedure which was not retroactively applicable. First, it confirmed that Ring (and by extension, Apprendi) is in fact a procedural rule subject to Teague. The Court explained that substantive rules "narrow the scope of a criminal statute by interpreting its terms [or] place particular conduct or persons covered by the statute beyond the State's power to punish . . . ." 124 S. Ct. at 2522. In contrast, rules of procedure "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been

acquitted otherwise." Id. at 2523. In a statement directly applicable to Blakely, the Court concluded, "rules that regulate only the *manner of determining* the defendant's culpability are procedural." Id. (emphasis in original). "Ring altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decision making authority in this fashion are prototypical procedural rules . . . ." Id.

Second, the Summerlin Court also rejected the contention that the jury requirement for sentencing factors established in Apprendi and Ring was a "watershed" rule demanding retroactive application. Addressing that exception, the Court stated "[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.' This class of rules is extremely narrow, and 'it is unlikely that any ... 'ha[s] yet to emerge.' Tyler v. Cain, 533 U.S. 656, 667, n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (quoting Sawyer v. Smith, 497 U.S. 227, 243, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990))." Summerlin, 124 S. Ct. at 2523. The Court held that the jury requirement is not one: "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders *at all*, we cannot confidently

say that judicial factfinding *seriously* diminishes accuracy." Id. at 2525 (emphasis in original).

The Summerlin holding is directly applicable to Blakely as well as the recent Supreme Court case applying Blakely to the United States Sentencing Guidelines, United States v. Booker, 543 U.S. __ (2005).[4] If, as in Summerlin, the requirement that a jury determine an aggravating factor which leads to imposition of the death penalty is not so fundamental to require retroactive application, surely the same rationale would apply to the guideline enhancements at issue here. See also Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004)("[t]he Supreme Court has not made the Blakely rule applicable to cases on collateral review as is required for authorization under § 2244(b)(2)(A) and § 2255 ¶ 8(2)"); In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004)(concluding that the Supreme Court has not yet held Blakely to be retroactively applicable, and further noting that, in fact, "the Supreme Court

[4] Likewise, every appellate court to address the issue, applying similar reasoning, held that the decision in Apprendi is not retroactively applicable in cases on collateral review. See, e.g., Sepulveda v. United States, 330 F.3d 55, 63 (1st Cir. 2003); Coleman v. United States, 329 F.3d 77, 90 (2d Cir.), cert. denied, 124 S. Ct. 840 (2003); United States v. Jenkins, 333 F.3d 151 (3d Cir.), cert. denied, 124 S. Ct. 350 (2003); United States v. Sanders, 247 F.3d 139 (4th Cir. 2001); United States v. Brown, 305 F.3d 304, 307-10 (5th Cir. 2002); Goode v. United States, 305 F.3d 378, 382-85 (6th Cir. 2002); Curtis v. United States, 294 F.3d 841, 842-44 (7th Cir. 2002); United States v. Moss, 252 F.3d 993, 997-1001 (8th Cir. 2001); United States v. Sanchez-Cervantes, 282 F.3d 664, 667-71 (9th Cir. 2002); United States v. Mora, 293 F.3d 1213, 1218-19 (10th Cir. 2002); McCoy v. United States, 266 F.3d 1245, 1256-58 (11th Cir. 2001).

has strongly implied that Blakely is not to be applied retroactively”).

**CONCLUSION**

For the foregoing reasons, Petitioner’s motion pursuant to 28 U.S.C. § 2255 should be denied.

Respectfully submitted,

Dated: March 22, 2005

THOMAS B. HEFFELFINGER
United States Attorney

s/ Joseph Dixon

BY: JOSEPH T. DIXON, III
Assistant U.S. Attorney
Attorney ID No. 0283903