IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| BOBBY MARVIN COLLINS, Petitioner, | ) | |
| -vs- | ) | Civil No.: 01-255-(RHK/ESS) |
| | ) | Crim. No.: 04-4973 (RHK) |
| UNITED STATES OF AMERICA, Respondent. | ) | |

**PETITIONER'S TRAVERSE TO THE GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

NOW COMES, Petitioner, Bobby Marvin Collins, Pro se, hereinafter, "Collins", and respectfully submits this Traverse to the Government's Response To Petitioner's §2255 Motion. In support of this Traverse, Collins states the following:

RECEIVED
BY MAIL
JUN 15 2005
CLERK, US DIST. COURT
ST. PAUL, MN

SCANNED
JUN 15 2005
U.S. DISTRICT COURT ST. PAUL

**Reply To Government's Response**

Because the government's position that Collins' issues of prejudice showed no merit, was the focal point of it's argument, Collins will only reply to the prejudice claims as the cause's claims hinge upon its success.

1. Collins' Conviction Violated The Second Amendment

In 1939, the U.S. Supreme Court ruled in United States v. Miller, 307 U.S. 174, 178, 59 S.Ct. 816, 818, 83 L.Ed.2d 1206 (1939). The Court opined that, "In the absence of any evidence tending to show that possession or use of (the sawed-off shotgun) at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument... with obvious purpose to assure the continuation and render possible the effectiveness of such forces the declaration and guarantee of the Second Amendment were made. It must be interpreted and applied with that end in view." Miller, supra, at p. 178, 59 S.Ct. at 818. Each of the cases that the government cites in support of it's assertion is based on Miller.

The government is correct when it stated that Collins had not shown, "that his ammunition possession was reasonably related to a well regulated militia." He thought that the need and purpose of him possessing and bearing the ammunition was understood to be obviously needed during these times for the purposes of his right and obligation.

At the time that the United States Supreme Court ruled in Miller, the United States of America and each of it's sovereign states were in accord with one another. There were no government tyrany and no known threats of foreign or domestic terrorism. However, just a little more than 2 years after the Miller decision, the Japanese Government ordered the bombing of, at the time, a U.S. territory and military base on Pearl Harbor, Hawaii. Since that bombing, there have been three highly publicized acts of foreign and domestic terrorism towards the people and places within the sovereign states of the United States of America. There was the first car bombing of the World Trade Center in the early nineties. Then there was the bombing of the Oklahoma Federal Building, thus, the catalyst of the creation of the Anti-Terrorism Effective Death Penalty Act. And recently, even though Collins was incarcerated at the time, the terroristic airline demolition of the World Trade Center Towers. This does not

include other unsolved major attacks, (i.e., anthrax assault and etc.). There are massive members of the well regulated militia protecting the boarders of the States of Arizona and New Mexico, as Collins files this Traverse. At no time did counsel investigate or question Collins' intent or purpose in possessing the antique weapon and ammunition. If he had, he would have found out that the antique items were a gift from a lady who appreciated Collins, and who wanted him to have the weapon for both appreciation and protection.

Therefore, because of the very real need to be prepared to protect the right and freedoms enjoyed by him, being the people and the remainder of the sovereign state, as it is his obligation under both the Second Amendment and Title 10 U.S.C. §§311 and 312, Collins has a right and obligation to be prepared to defend himself, the State and the Country against foreign and domestic terrorists. Collins' counsel failed to defend his right and obligation by using this affirmative defense prior to his trial and conviction.

2. <u>The Ammunition Could Have Been "Antique."</u>

The government portends that because the statute that defines "Antique Firearms" is silent as to whether they include,

"ammunitions" from the same time frame, then the "antique ammunition" claim is frivolous. In its brevity, the government fails to acknowledge the fact that the Minnesota statute it used to prohibit Collins from possessing "ammunition" is silent as to that particular fact. If a statute that is silent can be used against Collins, then another statute that can be reasonably helpful, even though it is silent to similar facts, could have reasonably been helpful to Collins as an affirmative defense. However, Collins' counsel failed to investigate and prepare this reasonable defense, which could have changed the outcome of this cause.

3. <u>The Government Failed To Show When The Ammunition Was Received By Collins At A Period Of Time, Which Was Not Barred By The Statute Of Limitations Per Wolf.</u>

In this particular claim, the government states that " the [d]efendant also argues that the government failed to prove the date on which the ammunition travelled [sic] in interstate commerce. Defendant cites no legal authority in support of this proposition. Nor is there any." It is strange that the government failed to argue against the logic of <u>United States v. Wolf</u>, 405 F.Supp 731, 733 (E.D. MISSOURI 1975), but instead, created

a totally different response with United States v. Shelton, 66 F.3d 991 (8th Cir. 1995). It is the argument found in Wolf that Collins addresses, not Shelton. And, it is Wolf's reasoning that Collins' counsel failed to reasonably argue. An argument that could have reasonably made a difference as to the outcome of Collins' criminal cause.

4. The A.C.C.A. Was Unconstitutionally Applied To Collins' Sentence.

In response to the government's assertion that Collins had argued his Sixth Amendment right in regards to the facts of his conviction, the government misunderstands his argument. United States v. Almendarez-Torres, 523 U.S. 224 (1998), which was used by the government in rebuttal, is an accepted fact that was not argued by Collins. Collins bases his argument on the elements about his convictions, not the fact of them existing. Collins stipulated to being a felon, not specifying or qualifying any of his prior convictions, underlying qualities or elements. This is the argument that Collins had set forth to which his counsel failed to investigate or argue on both the district or appellate court levels.

Therefore, Collins again contends that if his counsel would have argued that the findings of facts about his prior convictions using a pre-ponderance of the evidence standard without a jury determination was against his constitutional rights, then there is a reasonable possibility that the outcome could have been different.

4B. The A.C.C.A. Being Applied Against Collins In Light Of Blakely, Booker And Shepard.

Because this issue is related and governed pursuant to §2255(6)(3), and because the government used seven and two thirds of it's fourteen pages to respond to this issue, Collins responds in light of Reed v. Ross, 468 U.S. 1, 82 L.Ed.2d 1, 15, 104 S.Ct. 2901 (1984).

In Reed, the U.S. Supreme Court has held that, "where a constitutional claim is so novel that it's legal basis is not readily available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable... procedures." Reed held that the reasonings of U.S. v. Johnson, 457 U.S. 537, 73 L.Ed.2d 202, 102 S.Ct. 2579 (1982), were to be applied. In Johnson, the U.S. Supreme Court, "identified three situations in which a 'new' constitutional rule, representing a 'clear break

with the past' might emerge from this Court. Id., at 549, 73 L.Ed.2d 202, 102 S.Ct. 2579 (quoting Desist v. United States, 394 U.S. 244, 258-59, 22 L.Ed.2d 248, 89 S.Ct. 1030 (1969). First, a decision of this Court may explicitly overule one of our precedents. Second, a decision may overturn a 'longstanding and widespread practice to which this Court has not spoken, but which a near unanimous body of lower court authority has expressly approved.' And finally, a decision may disapprove a practice this Court has arguably sanctioned in prior cases." Blakely's Sixth Amendment holding was applied to the United States Sentencing Guidelines law in Booker. The U.S. Sentencing Guidelines mandatory aggravating circumstances of a kind or to a degree was found to be violative of the Sixth Amendment when found by a judge using the preponderance of the evidence standard of proof, instead of being found by a jury using the beyond a reasonable doubt standard of proof. The aggravating circumstances of a kind or to a degree encompasses all facts essential to punishment, except for the fact of a prior conviction. Those facts are in accordance to Almendarez-Torres. All other facts must be submitted to the jury and found by a reasonable doubt standard or admitted to by the defendant.

The facts that Collins' dispute herein, as violating his Fifth and Sixth Amendment rights are the facts about his prior

convictions as these facts that are in contradiction to Blakely, Booker and Shepard.

Because Blakely only deals with state legislated guideline structures, Collins only uses Blakely to explain the definition of the holding in Booker.

Because Blakely interpreted and narrowed the terms of the U.S. Sentencing Guidelines Law, it was held to be a substantive holding that prohibited the mandatory law from punishing certain people for certain things above a statutory point. See U.S. v. Booker, (January 12, 2005) No. 04-104 (page 68 of the Find Law for Legal Professionals Edition) Justice Bryers dissent of the Sixth Amendment holding states the following: "The Court's substantive holding rests upon it's decisions in Apprendi, supra and Blakely, supra... Today, the Court applies it's Blakely definition to the Federal Sentencing Guidelines."

In terms of whether or not the substantive holding is retroactive or not, by being made retroactive by the Supreme Court, one has to look to the mandate in Tyler v. Cain, 533 U.S. 656, 671-72, 150 L.Ed.2d 632, 646-47, 121 S.Ct. 2478 (2001), the dicta in Schriro v. Summerlin, No. 03-526 (June 24, 2004), and the mandate of Blakely v. Washington, 159 L.Ed.2d 403, 412-14 (2004).

In Tyler v. Cain, Justice O'Connor, in a concurring opinion, encouraged and explained the Court's holding and held that, "it

is only through the holdings of this Court, as opposed to this Court's dicta and as opposed to decisions of any other court, that a new rule is made retroactive... The Court... can be said to have made a rule retroactive... only where the Court's holdings logically permit no other conclusion than that the rule is retroactive... It is relatively easy to demonstrate the required logical relationship with respect to the first exception articulated in Teague v. Lane, 489 U.S. 288, 103 L.Ed.2d 334, 109 S.Ct. 1060 (1989). Under this exception, a new rule should be applied retroactively if it places certain kinds of primary, private, individual conduct beyond the power of the criminal law making authority to proscribe; id., at 307, 103 L.Ed.2d 334, 109 S.Ct. 1060 (plurality opinion) (quoting Mackey v. United States, 401 U.S. 667, 692, 28 L.Ed.2d 404, 91 S.Ct. 1160 (1971))... When the Court holds as a new rule in a subsequent case that a particular species of primary, private, individual conduct beyond is beyond the power of the criminal law making authority to proscribe, it necessarily follows that this Court has made that new rule retroactive to cases on collateral review. The Court has done so through it's holdings alone, without resort to dicta and without any application of principles by lower court."

In Schriro v. Summerlin, No. 03-526 (June 24, 2004) (Slip pages 3-4), the U.S. Supreme Court, using dicta, cited Bousley

for explaining retroactive substantive holdings in that "New substantive rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting it's terms. See Bousley v. United States, 523 U.S. 614, 620-21 (1998), as well as Constitutional determinations that place particular conduct or persons covered by the statute beyond the state's power to punish. See Saffles v. Park, 494 U.S. 484, 494-95 (1990)... Such rules apply retroactive because they necessarily carry a significant risk that a defendant... faces a punishment that the law cannot impose upon him. Bousley, supra, at 620, quoting Paris v. United States, 417 U.S. 333, 346 (1979). "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes... A decision that modifies the elements of an offense is normally substantive rather than procedural. New elements alter the range of conduct the statute punishes, rendering some formerly unlawful conduct lawful, or vice versa. See Bousley, 523 U.S. at 620-21. But that is not what Ring did; The range of conduct punished by death in Arizona's statutory aggravator's restricted (as a matter of state law) the class of death eligible defendants, those aggravators effectively were elements for federal constitutional purposes, and so were subject to the procedural requirements the Constitution attaches to trial elements. 536 U.S., at 609. This

Court's holding that, because Arizona has made a certain fact essential to the death penalty, that fact must be found by a jury, is not the same as this Court's making a certain fact essential to the death penalty. The former was a procedural holding; the latter would be substantive."

In Blakely v. Washington, the Court held that, "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment; Bishop, supra, §87 at 55, and the judge exceeds his proper authority... The relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings... Those who would reject Apprendi are resigned to one of two alternatives. The first is that the jury need only find whatever facts the legislature chooses to label elements of the crime, and that those it labels sentencing factors, no matter how much they may increase the punishment, may be found by the judge. This would mean, for example, that a judge could sentence a man for committing murder, even if the jury convicted him only of illegally possessing the firearm used to commit it... The second alternative is that legislatures may establish legally essential sentencing factors within limits -- limits crossed when, perhaps, the sentencing factor is a tail which wags the dog of

the substantive offense. McMillan, 477 U.S., at 88, 106 S.Ct. 2411. What this means in operation is that the law must not go too far - It must not exceed the judicial estimation of the proper role of the judge... The right to a jury trial was no mere procedural formality, but a fundamental representation to the people of control over the judiciary in the nation's constitutional structure."

In Bousley v. United States, supra, at 523 U.S. 614, 620-21, the Supreme Court held that, "because Teague, by it's terms applies only to procedural rules, we think it inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress. By contrast, decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-making authority to proscribe... for under our federal system, it is only congress and not the Courts, which can make conduct criminal. United States v. Lanier, 520 U.S. 259, 268 n.6, 137 L.Ed.2d 432, 117 S.Ct. 1219 (1997); U.S. v. Hudson, 3 L.Ed. 259 (1812)."

The holdings in the aforementioned cases, coupled with the Supreme Court's Sixth Amendment holding in Booker, as stated by Supreme Court Justice, Breyer, has made the holding in Booker retroactive.

Collins further argues that Booker only applies to his case, as to its Sixth Amendment holding, and not its remedial interpretation holding. This reasoning is supported by the Due Process and Ex Post Facto Clauses. In Marks v. United States, 423 U.S. 188 (1977), the U.S. Supreme Court held that "[d]ue process protects a defendant from the ill effect of judicial re-writing of statutes, when that re-writing occurred after a defendant commited his or her crime, more or less in the same way that the Constitution's Ex Post Facto Clause protects against retroactive legislation. See also; Garner v. Jones, 529 U.S. 244 (2000); and Miller v. Florida, 482 U.S. 423 (1987). Therefore, the mandatory protections of the standard range of the statute, which prevents this or an even more adverse and higher unconstitutional sentence, and which only applies to the jury's determination of Jones' guilty conduct as determined by §3553(a)(4), is applicable.

In specfically dealing with the A.C.C.A., under and in light of Shepard, one must first determine Shepard's reach. Is it retroactive, and does it reach Federal Court decisions not specifically surrounding, "generic burglary" issues? Collins believes that the language and holding in Shepard is affirmative to the former and latter of the two questions.

Is Shepard retroactive? The answer could best be answered within Shepard itself. On page 8 of the Find Law For Legal Professionals Edition of Shepard (Judge Souter delivering the Opinion of the Court) the Court in addressing the type of holding surrounding the Courts' Opinion in Shepard states that, "[t]here is not, however, any sufficient justification for upsetting precedent here. We are, after all, dealing with an issue of statutory interpretation, ... and the claim to adhere to case law is generally powerful once a decision has settled statutory meaning, ... In this instance, time has enhanced even the usual precedential force, nearly 15 years having passed since Taylor came down, without any action by Congress to modify the statute as subject to our understanding that it allowed only a restricted look beyond the record of conviction under a generic statute." As stated in the aforementioned argument supporting Booker's retroactivity, interpretations by the Supreme Court narrowing a meaning of a statute is a substantive holding, which is subject to the same retroactive analysis as Bousley.

Does Shepard's decision and holding reach other issues not "surrounding Shepard's generic burglary issue?" On page 2 of the Find Law For Legal Professionals Edition of Shepard, the synopsis of the Court in Part III states that, "Justice Souter, joined by Justice Stevens, Justice Scalia, and Justice Gingsburg,

concluded in Part III that the rule in the Jones v. United States, 526 U.S. 227, 243, n.6, and Apprendi v. New Jersey, 530 U.S. 466, 490, line of cases -- that any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, absent a waiver by the defendant -- is also relevant to A.C.C.A. sentencing." Specifically, Judge Souter states the following in PartIII;

> "... the sentencing judge considering the A.C.C.A. enhancement would (on the government's view), make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea, and the dispute raises the concern underlying Jones and Apprendi: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to Jones and Apprendi, to say that Almendarez-Torres clearly authorizes a judge to resolve the dispute. The rule of reading statutes

> to avoid serious risks of unconstitutionality, see Jones, supra, at 239, therfore counsels us to limit the scope of judicial fact-finding..."

Though the Court stopped just short of overruling Almendarez-Torres, (who had actually pled guilty to the offense and admitted to his prior convictions and had admitted about all the elements of those convictions), Justice Thomas gives a much stronger concurring opinion by stating the following in part:

> "The constitutional infirmity of §924(e)(1), as applied to Shepard, makes today's decision an unnecessary excercise... Almendarez-Torres, like Taylor, has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that Almendarez-Torres was wrongly decided. See 523 U.S., at 248-49 (Scalia, J., joined by Stevens, Souter, and Gingsburg, JJ., dissenting); Apprendi, supra, at 520-21 (Thomas, J., concurring). The parties do not request it here, but in an appropriate case, this Court should consider Almendarez-Torres' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of Almendarez-Torres, despite the fundamental imperative that the

Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond a reasonable doubt requirements. "Harris v. United States, 536 U.S. 545, 581-82 (2002) (Thomas, J., dissenting)"

And the final case analysis that suggests that Collins' sentence, pursuant to the A.C.C.A., violates his Sixth Amendment and Fifth Amendment rights is United States v. Tek Ngo, No. 04-2662 (7th Cir., Decided May 3, 2005). In Ngo, Judge Cudahy, giving the opinion of the court, states in relevant part on page 6 of the Slip opinion, that "Even after Booker, however, we have not scrutinized factual findings of this sort because they have been assumed to fall within the Almendarez-Torres exception, and the government's position is that the sentencing judge is still privileged to make such findings. But after Shepard, the question arises whether the district court exceeded the scope of the prior conviction exception by deciding these facts on its own."

At no time did Collins' counsel challenge the documents and the accuracy of their contents in qualifying Collins' prior convictions, except for the 1988 conviction, in deciding that he would be an Armed Career Criminal. However, the qualifying of the 1988 case was done so in disregard to a certified Restoration

of Rights Certificate from the State of Minnesota for the 1988 case. Not only did the fact-finding process disregard the Certificate, but it found that the Minnesota statute, which had prohibited Collins from possessing firearms and silent to ammunition, had to include ammunition for the purposes of the A.C.C.A. ENHANCEMENT. This is quite contrary to Booker, and especially to Shepard. The government at no time offered any evidence, other than the date that Collins had committed the crime of 1988 and other than the effective date that the law prohibited him from possessing firearms, not ammunition. However, at no time did the government secure a state witness or a state certified document stating that Collins had, in fact, received his Restoration of Rights Certificate in error and in contravention of the law. The Minnesota statute, used against Collins, had gone into effect only several weeks before Collins had committed the 1988 crime. The factual inquiry into the facts about the 1988 conviction without the government presenting all facts underlying and about the conviction, and not just its existence, violated Collins Sixth Amendment Rights per Shepard, Apprendi and Jones. As a matter of fact and law, Collins reasserts that the findings of any facts about any of his prior convictions by the Court's judge using a preponderance of the evidence standard has violated his Sixth Amendment and Fifth Amendment rights in accordance to Jones, Apprendi

and subsequent holdings. This argument has not attempted to overrule Almendarez-Torres, as he has not challenged his admittance of having several prior felony convictions, but he has never admitted any facts about those priors found by a jury beyond a reasonable doubt.

Therefore, Collins avers that, pursuant to the Jones, Apprendi, etc. claim, his counsel was ineffective for failing to assert his Sixth Amendment rights in determining the facts about his prior convictions, and he avers that Shepard may apply to some of the documentation used to sentence Collins under the A.C.C.A., but that it definitely applies to the use of facts about the 1988 crime used against him for the A.C.C.C. Act.

## CONCLUSION

Collins humbly prays for relief from this Court, as well as thanks this Court for it's fairness and impartiality within these proceedings. Collins, however, would like to quote from the oral arguments of the United States Supreme Court case, Michael Donald Dodel v. United States, (No. 04-5286) (argued March 22, 2005). On page 32, Justice Kennedy and the Assistant to the Solicitor General become involved in this colloquy:

Line 18, Justice Kennedy: But what -- what interest does the government have in holding somebody when the conduct for which he was convicted is no longer a crime?

Line 21, Mr. Feldman: The government doesn't have any interest in doing that. And I -- I think if the government --

Line 24, Justice Kennedy: Why don't you let the guy go?

Mr. Feldman: I would -- I would recommend the government do that if we found a case.

This is such a case.

Executed this 10th day of June, 2005

Sincerely and Respectfully Submitted,

Bobby M. Collins

Bobby Collins #10073-041
Federal Correctional Institution
P.O. Box 1000
Oxford, WI. 53952-1000